IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| JACOB D.,[1] | Case No. 6:24-cv-01191-HL |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

HALLMAN, United States Magistrate Judge:

Plaintiff Jacob D. brings this action under the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's applications for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI") under Titles II and XVI of the Act. 42 U.S.C. § 401 *et seq*. For the following reasons, the decision of the Commissioner is AFFIRMED.

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name for non-governmental parties and their immediate family members.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

**BACKGROUND**

**I.    Plaintiff's Application**

Plaintiff alleges disability based on depressive disorder, possible autism, post-traumatic stress disorder ("PTSD"), attention-deficit hyperactivity disorder, dissociative identity disorder,

and nonverbal sometimes. Tr. 309.² At the time of plaintiff's alleged onset date, he was 23 years old. Tr. 24.³ He has an eleventh-grade education and has past relevant work experience as a cashier, commercial cleaner, survey worker, and reservation clerk. Tr. 24, 310.

Plaintiff protectively applied for DIB and SSI in November 2020. Tr. 316-18. His applications were denied initially on August 2, 2021, and on reconsideration on June 1, 2022. Tr. 64-65, 75-76, 125-26, 149-50. Plaintiff subsequently requested a hearing, which was held on August 18, 2023, before Administrative Law Judge ("ALJ") Katherine Weatherly. Tr. 32. Plaintiff appeared and testified at the hearing, represented by his counsel Mark Manning. Tr. 34. A vocational expert ("VE"), Michelle Bishop, also testified. Tr. *Id.* On October 19, 2023, the ALJ issued a decision denying plaintiff's claims. Tr. 32. Plaintiff requested Appeals Council review, which was denied on June May 23, 2024. Tr. 1-3. Plaintiff then sought review before this Court.⁴

## II.    Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

---

² Citations to "Tr." are to the Administrative Record. (ECF 8).

³ Plaintiff initially identified January 1st, 2008, as the alleged onset date but later amended the alleged onset of disability to January 1, 2019. Tr. 289.

⁴ The parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636. (ECF 5).

PAGE 3 – OPINION AND ORDER

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141. At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c).

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

**III.    The ALJ's Decision**

At step one, the ALJ determined plaintiff had not engaged in substantial gainful activity since his alleged onset date of January 1, 2019. Tr. 19.

At step two, the ALJ determined plaintiff has the following severe impairments: "autism spectrum disorder (without intellectual or language impairment); PTSD; bipolar II disorder; borderline personality disorder; and rule out dissociative disorder." Tr. 19.

At step three, the ALJ determined plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 20. The ALJ then resolved that plaintiff had the residual function capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following non-exertional limitations: he can persist at simple, routine, repetitive tasks involving simple work-related decision and changes. He cannot tolerate fast-paced production work. He can tolerate occasional interaction with co-workers and supervisors. He cannot tolerate interaction with the public.

Tr. 21

At step four, the ALJ found plaintiff could not perform his past relevant work. Tr. 24.

But at step five—considering plaintiff's age, education, work experience, and RFC—the ALJ found a significant number of jobs existed in the national economy that plaintiff could perform, including work as a routing clerk, marker, and waxer cleaner. Tr. 24-25. Thus, the ALJ concluded that plaintiff is not disabled. Tr. 25-26.

PAGE 5 – OPINION AND ORDER

# DISCUSSION

Plaintiff argues the ALJ committed three harmful errors. Pl. Br. at 2. He contends the ALJ erred by (1) discounting his subjective symptom testimony without a clear and convincing reason for doing so, (2) rejecting third-party witness testimony without a germane reason, and (3) improperly evaluating the medical opinions of Walter Rosenthal, QMHP, and Scott Alvord, PsyD. *Id.* For the following reasons, the Court finds the ALJ did not err, and affirms.

## I.     Symptom Testimony

Plaintiff asserts the ALJ improperly rejected his subjective symptom testimony. Pl. Br. at 11-16. This Court disagrees.

### A.     Legal Standards

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show the impairment could reasonably be expected to cause the severity of the symptoms, but only show it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony they discredit and explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d

1195, 1208 (9th Cir. 2001). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

### B.     Plaintiff's Testimony

One of plaintiff's claimed limitations is dissociative identity disorder. Tr. 309.[5] At the administrative hearing, plaintiff testified one of his alters is non-verbal, meaning when this alter is active, plaintiff is non-verbal. Tr. 39.

Plaintiff testified he worked part-time at a call center in late 2019 while taking online courses to try to complete his GED. Tr. 38-40. At the call center, he worked four-hour shifts three or four times a week until he quit "because the stress of the job was too much." Tr. 39. Regarding his non-verbal alter, plaintiff explained he would not come into work when non-verbal, or if he did come in, he "would use [his] phone to text – like show texts that [he] wasn't

---

[5] "Dissociative identity disorder (DID) . . . is a mental health condition where you have two or more separate identities . . . People with dissociative identity disorder may experience several different personalities, usually referred to as alters." Cleveland Clinic, Dissociative Identity Disorder (Multiple Personality Disorder), Cleveland Clinic, (June 26, 2025, 12:36 PM), https://my.clevelandclinic.org/health/diseases/9792-dissociative-identity-disorder-multiple-personality-disorder.

able to communicate in order to let them know that [he] wouldn't be there." Tr. 40. Plaintiff then described his earlier job at WinCo where he worked as a cashier and in maintenance from November 2015 to December 2017. Tr. 40, 298. When non-verbal at WinCo, plaintiff would sometimes put up a sign saying so. Tr. 40. Plaintiff reported he has bad depression at times and attends online therapy either once a week, once every other week, or on bad occasions—such as preparing for the hearing—twice a week. Tr. 44.

Plaintiff testified he drives, lives with a partner, and is ambidextrous. Tr. 37-38. He reported he rarely goes places with his partners, goes shopping maybe once a month, and will meet with friends one-to-three times a month, but will sometimes cancel a day or two in advance. Tr. 42. Plaintiff testified he spends his days in his living room either on his phone, PC, or PlayStation. *Id.* He explained: "I'm usually either gaming or maybe reading something if I have the capacity for it, but a lot of the time, I end up not being able to read." *Id.* On an average day, plaintiff stated he spends between an hour or up to eight hours of time gaming. Tr. 42-43. Plaintiff answered "No" when asked by the ALJ if these games are multiplayer games. Tr. 43. Plaintiff testified his mutism does not occur as frequently, but he will still have occasions of non-verbal mutism that may last a week or, on one occasion, up to a month. Tr. 46.

In plaintiff's function report, he stated he was non-verbal and could therefore not work any jobs requiring talking. Tr. 346. He continued to state he cannot focus enough for time management, suffers from insomnia, and his lack of sleep combined with his depression keeps him fatigued and tired all day. Tr. 346-47.

### C.     Analysis

To reject a plaintiff's subjective symptom testimony based on objective evidence, an ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are

PAGE 8 – OPINION AND ORDER

not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Here, the ALJ noted generally "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 22.

Plaintiff first argues the ALJ failed to identify what testimony was inconsistent and what evidence undermined the testimony. Pl. Br. at 13. This Court disagrees. The ALJ identified how plaintiff's ability "to provide extensive handwritten responses to agency questionnaires – to the point he required an extra page for his elaborations" undermines plaintiff's testimony of "poor focus and chronic fatigue." Tr. 22, 346-54. The ALJ also identified plaintiff's testimony relating to his "non-verbal episodes" as inconsistent with plaintiff working "for data research companies conducting telephone surveys over multiple years." Tr. 22, 298. Thus, the ALJ reasonably explained how evidence in the record was inconsistent with Plaintiff's asserted limitations. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (finding an ALJ may consider inconsistencies between plaintiff's testimony and his conduct).

Plaintiff next argues the ALJ improperly rejected plaintiff's symptom testimony by discounting his testimony due to a lack of supporting objective medical evidence. Pl. Br. at 14 (citing *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) and *Laborin v. Berryhill*, 867 F.3d 1151, 1153-54 (9th Cir. 2017)). Plaintiff's argument is unavailing because the ALJ did not discount plaintiff's subjective symptom testimony due to a lack of supporting medical evidence, but rather due to contradictory medical evidence undermining plaintiff's testimony. Tr. 22.

The most important factor in evaluating symptom severity is whether the alleged symptoms are substantiated by the objective medical evidence that is, the signs and clinical and

PAGE 9 – OPINION AND ORDER

laboratory findings. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); SSR 16-3p, 2017 WL 5180304, at *5. In determining whether the alleged symptoms are substantiated, the ALJ will consider any inconsistencies between plaintiff's testimony and the rest of the evidence, including objective medical evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); see *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (holding inconsistency can be based on objective medical evidence).

The ALJ cited to inconsistencies between plaintiff's testimony and plaintiff's medical record, such as how despite plaintiff's complaints of fatigue, depression, and anxiety, plaintiff "exhibited no signs of depression or anxiety on exam," nor did he appear socially withdrawn. Tr. 22, 523-24. To the contrary, plaintiff's "cognition, memory, mood, affect, and speech were all reportedly 'normal.'" *Id.* The ALJ also cited two other office visits in early 2019—around the time plaintiff alleges his symptoms became disabling—in which plaintiff's providers reported "similarly benign findings." Tr. 22, 533, 542. The ALJ connected this evidence to her assessment of plaintiff's testimony by concluding: "[s]uch clinical findings are not indicative of a debilitating psychological condition." Tr. 22. The ALJ's citation to inconsistencies between plaintiff's testimony and plaintiff's medical record is "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*, 278 F.3d at 958 (9th Cir. 2002).

In sum, the ALJ provided two clear and convincing reasons, supported by substantial evidence, for discounting plaintiff's subjective symptom testimony. This is more than sufficient to affirm her decision on this issue. See *Sims v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017) (affirming the ALJ's opinion discounting the claimant's testimony because the ALJ

"provided at least one clear and convincing reason supported by substantial evidence for rejecting [the] testimony as not credible").

## II.    Lay Witness Testimony

Plaintiff asserts the ALJ improperly rejected lay witness testimony—a report from plaintiff's case manager, Bridget Jenkins, CADC, QMHA—without providing germane reasons for doing so. Pl. Br. at 16-17. This Court disagrees.

### A.    Legal standards

"Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. §§ 404.1520c(d), 416.920c(d).

The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).[6] But

---

[6] Citing the revised regulations for medical source opinions and the Ninth Circuit's unpublished opinion in *Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630, at *3 n.1 (9th Cir. Dec. 27, 2022), the Commissioner argues the ALJ is no longer required to provide "germane reasons" for discounting lay witness testimony. Def. Br. 12-13. The Ninth Circuit, in a recent unpublished opinion, noted it remains "an open question whether the new regulations affect the longstanding requirement in the Ninth Circuit that an ALJ must give germane reasons for rejecting lay witness testimony." *Jarrett v. O'Malley*, No. 23-3565, 2024 WL 4707890, at *3 (9th Cir. Nov. 7, 2024). Absent further guidance from the Ninth Circuit, this Court disagrees that the new regulations provide a basis to reject the Ninth Circuit's longstanding precedent concerning "germane reasons." *See Donna B.S. v. O'Malley*, No. 6:22-CV-1571-SI, 2024 WL 3534431, at *7 (D. Or. July 25, 2024) (so holding).

PAGE 11 – OPINION AND ORDER

the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114, *superseded on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id.* Additionally, when the ALJ provides clear and convincing reasons for rejecting plaintiff's subjective complaints, and the lay witness' testimony is similar to plaintiff's complaints, "it follows that the ALJ also gave germane reasons for rejecting [the lay witness'] testimony." *Valentine*, 574 F.3d at 694.

      **B.**      **Analysis**

Ms. Jenkins' testimony in this case mirrored plaintiff's testimony about his symptoms likely because, in her own words, Ms. Jenkins "can only report what he has claimed to me." Tr. 367. Ms. Jenkins described mental and physical health-related limitations that tracked plaintiff's own allegations. *Compare* Tr. 37-50 (plaintiff's testimony) *with* Tr. 360-67 (Ms. Jenkins' testimony). Therefore, because the ALJ noted how Ms. Jenkins' testimony "generally relies on the claimant's subjective complaints," and the ALJ provided clear and convincing reasons to discount plaintiff's subjective complaints, the ALJ gave germane reasons for discounting Ms. Jenkins' testimony. Tr. 24. Thus, the ALJ's assessment of Ms. Jenkins was reasonable, based on the proper legal standards, and supported by substantial evidence.

**III.**    **Medical Opinion Evidence**

Finally, plaintiff argues the ALJ did not properly consider Scott Alvord's, PsyD, and Walter Rosenthal's, QMHP, medical opinions. Pl. Br., at 3-11. This Court disagrees.

///

///

A.     Legal standards

Where, as here, the plaintiff's application is filed on or after March 27, 2017, the ALJ is no longer tasked with "weighing" medical opinions, but rather must determine which are most "persuasive." 20 C.F.R. §§404.1520c(a)-(b); 416.920c(a)-(b). Under the new regulations, "the former hierarchy of medical opinions – in which we assign presumptive weight based on the extent of the doctor's relationship – no longer applies." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). An ALJ's "decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* "The most important factors that the agency considers when evaluating the persuasiveness of medical opinions are supportability and consistency." *Id.* at 791 (emphasis added) (internal quotations omitted); 20 C.F.R. § 404.1520c(a). However, "the extent of the claimant's relationship with the medical provider – what we will refer to as 'relationship factors' – remains relevant under the new regulations." *Id.* at 790.

Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Woods* 32 F.4th at 791-92 (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R. § 404.1520c(c)(2)). In evaluating the "supportability" and "consistency" of a medical opinion, the ALJ is not required to articulate how each individual medical opinion was considered. For example, where a single medical source provides more than one medical opinion, the ALJ will generally address the source's medical opinions together in a single analysis. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

"An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation

thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). In other words, "[t]he ALJ must do more than offer his conclusions . . . [h]e must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "Although [the reviewing court] will not fault the agency merely for explaining its decision with less than ideal clarity, we still demand that the agency set forth the reasoning for its decision in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2017) (internal citation and quotation marks omitted).

### B.     Dr. Alvord

Dr. Alvord met with plaintiff three times to conduct consultative examinations, first on June 29, 2021, then on May 11, 2022, and finally on December 21, 2022. Tr. 437-39, 443-48, 1674-79. In his report of their second consultation, Dr. Alvord provided a capability statement and functional assessment stating plaintiff is "capable of managing his own funds" and would have: "moderate difficulty understanding, carrying out, and remembering instructions (both complex and one-two step)"; "moderate to marked difficulty sustaining concentration and persisting in work related activity at a reasonable pace"; "moderate to marked difficulty [to] maintain effective social interaction on a consistent and independent basis with supervisors, co-workers, and in the public"; and "moderate to marked difficulty dealing with normal pressures in a competitive work setting." Tr. 447. The ALJ found Dr. Alvord's functional assessment "less persuasive" because it was unsupported by Dr. Alvord's clinical findings and inconsistent with mental health treatment notes from the same period. Tr. 23. The ALJ's conclusion was supported by substantial evidence.

First, the ALJ noted how Dr. Alvord's assessment of plaintiff having "moderate difficulty understanding, carrying out, and remembering" even "one-two step" instructions is unsupported

PAGE 14 – OPINION AND ORDER

by Dr. Alvord's own findings. Tr. 23, 446. The ALJ explained how Dr. Alvord provided "no clinical signs suggesting the claimant would struggle with simple unskilled tasks" and, contrarily, Dr. Alvord reported plaintiff performed a panel of memory, attention, concentration, and general information without error. Tr. 23, 445. Plaintiff also exhibited intellectual ability in the "low average" IQ range and had adequate long-term, short-term, and immediate working memory. Tr. 23, 446. There were no signs plaintiff would struggle with simple unskilled tasks. Tr. 23, 445-47.

The ALJ continued to explain how Dr. Alvord's assessments of plaintiff having difficulty maintaining social interaction and dealing with normal workplace pressures are "inconsistent" with Dr. Alvord's findings plaintiff has cyclical moods, sometimes enjoys socializing, exhibited normal thought process, and was pleasant and cooperative throughout his examination. Tr. 22-23, 445-46. Because the ALJ provided substantial evidence explaining how Dr. Alvord's assessment was unsupported by Dr. Alvord's findings, the ALJ properly addressed the supportability factor.

Second, the ALJ addressed the consistency of Dr. Alvord's opinion. Tr. 23. The ALJ found Dr. Alvord's opinion less persuasive because it was inconsistent with mental health treatment notes from other providers during the same period. *Id.* While Dr. Alvord provided the limiting functional assessments described above, mental health professionals at the time described plaintiff as cooperative, fully oriented, appropriate, and logical. Tr. 23, 2104, 2111. The ALJ cited treatment notes from the time describing plaintiff's "mental status as 'stable for several months'" Tr. 23 (quoting Tr. 2102, 2109). The ALJ continued to cite records from the period describing plaintiff as open, engaged, and adequately groomed while exhibiting a linear, goal-directed, and logical thought process—despite occasional anxiety and recurring depression.

PAGE 15 – OPINION AND ORDER

Tr. 23, 2117. Due to these inconsistencies with the record, the ALJ found Dr. Alvord's opinion less persuasive.

Thus, the ALJ's finding of Dr. Alvord's opinion to be less persuasive complied with the regulations governing the Commissioner's evaluation of medical opinions and was supported by substantial evidence.

### C.     Mr. Rosenthal, QMHP

Mr. Rosenthal, QMHP, treated plaintiff once or twice a week for over two years. Tr. 23, 2394. The ALJ summarized Mr. Rosenthal's June 2023 report on plaintiff which stated plaintiff was unable to function in a work setting due to severe depression, anxiety, nightmares, insomnia, panic, emotional dysregulation, mutism, and trauma triggers. Tr. 23, 2395. Mr. Rosenthal also reported plaintiff would be excessively absent from work due to these symptoms. Tr. 23, 2399. The ALJ found Mr. Rosenthal's assessment less persuasive because of "apparent discrepancy" between Mr. Rosenthal's assessment, his own treatment records, and observations of other medical providers. Tr. 23-34. The ALJ's conclusion was supported by substantial evidence.

First, the ALJ addressed the supportability factor by citing to Mr. Rosenthal's treatment notes inconsistent with Mr. Rosenthal's June 2023 assessment of plaintiff. Tr. 23. The ALJ noted how Mr. Rosenthal repeatedly observed plaintiff to be "cooperative, fully oriented, appropriate appearing, and logical" over the course of five visits between November 2022 and January 2023. Tr. 23, 2097, 2104, 2111, 2151, 2166. The ALJ then reasonably highlighted how "[i]t is therefore unclear how the treatment provider arrived at the conclusion the claimant would be mentally unable to tolerate competitive employment." Tr. 23-24.

Second, the ALJ addressed the consistency factor by citing to "contemporaneous clinical observations" by other treatment providers inconsistent with Mr. Rosenthal's medical opinion.

PAGE 16 – OPINION AND ORDER

Tr. 24. The ALJ noted how other treatment providers similarly observed plaintiff to be "'calm,' 'cooperative, open and engaged.'" Tr. 24 (quoting 2117, 2157). Therefore, the ALJ properly applied the regulations in finding Mr. Rosenthal's opinion less persuasive.

Plaintiff argues the ALJ improperly focused on "certain 'objective' evidence" while assessing Mr. Rosenthal's medical opinion. Pl. Br. at 5. Plaintiff argues the ALJ erred by not citing to Mr. Rosenthal's treatment records reporting plaintiff's instances of selective mutism. *Id.* However, it is the ALJ's duty, not this Court's, to resolve ambiguities in the medical evidence. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-42 (9th Cir. 2008) ("The ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."); "The ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

Because the ALJ's assessment of Mr. Rosenthal's opinion was reasonable and supported by substantial evidence, it is affirmed. *Garrison*, 759 F.3d at 1010 ("Where the evidence can reasonably support either affirming or reversing a decision, we [the court] must not substitute our judgment for that of the ALJ." (citation and internal quotation and brackets omitted)).

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Court AFFIRMS the Commissioner's decision.

IT IS SO ORDERED.

DATED this 27th day of June, 2025.

_____
ANDREW HALLMAN
United States Magistrate Judge